UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE CORENA,<br><br>   Plaintiff,<br><br> v.<br><br>RODRIGUEZ, et al.,<br><br>   Defendants. | Case No. 1:16-cv-01025-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS CONSISTENT WITH MAGISTRATE JUDGE'S PRIOR ORDER IN LIGHT OF <u>WILLIAMS</u> DECISION<br><br>(ECF NOS. 14 & 16)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

  Jorge Corena ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff consented to magistrate judge jurisdiction. (ECF No. 6). Based on a review of the docket, it appears that no defendants have been served.

  The Court previously screened Plaintiff's complaint. (ECF No. 16). The Court found that Plaintiff stated a cognizable claim against Defendants Rodriguez, Cerveza, and Doe for excessive force in violation of the Eighth Amendment, against Defendant Doe for failure to protect in violation of the Eighth Amendment, and against Defendants Rodriguez and Doe for retaliation in violation of the First Amendment, and dismissed all other claims and defendants. (<u>Id.</u>).

  As described below, in light of Ninth Circuit authority, this Court is recommending that the assigned district judge dismiss claims and defendants consistent with the order by the magistrate judge at the screening stage.

**I. <u>WILLIAMS v. KING</u>**

  On November 9, 2017, the United States Court of Appeals for the Ninth Circuit held that a magistrate judge lacked jurisdiction to dismiss a prisoner's case for failure to state a

claim at the screening stage where the Plaintiff had consented to magistrate judge jurisdiction and defendants had not yet been served. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Specifically, the Ninth Circuit held that "28 U.S.C. § 636(c)(1) requires the consent of all plaintiffs and defendants named in the complaint—irrespective of service of process—before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Id. at 501.

Here, the defendants were not served at the time the Court issued its order dismissing claims and defendants, and therefore had not appeared or consented to magistrate judge jurisdiction. Accordingly, the magistrate judge lacked jurisdiction to dismiss claims and defendants based solely on Plaintiff's consent.

In light of the holding in Williams, this Court will recommend to the assigned district judge that he dismiss the claims and defendants previously dismissed by this Court, for the reasons provided in the Court's screening order.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 5), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III. SUMMARY OF ALLEGATIONS IN PLAINTIFF'S ORIGINAL COMPLAINT

On July 9, 2014, Plaintiff was incarcerated at California Correctional Institute ("CCI"), which is located in Tehachapi. That day, Defendant Rodriguez told Plaintiff to get ready for church, where Plaintiff worked as chaplain's assistant. Defendant Rodriguez then told Plaintiff: "'you think you're slick motherfucker; I got you.'" Plaintiff then exited his cell, went downstairs, and entered the sally port. In the sally port, Plaintiff saw that Defendant Cerveza had taken off his green correctional officer shirt. When Plaintiff attempted to exit the sally port, his exit was blocked by Defendant Rodriguez and Defendant Doe.

Defendant Cerveza told Plaintiff to turn around and cuff up. Plaintiff complied. Once Plaintiff was in handcuffs, Defendant Cerveza assaulted Plaintiff by striking Plaintiff on his face. Defendant Rodriguez joined in, hitting Plaintiff on his back. Defendant Rodriguez then pulled out his baton and started jabbing Plaintiff in the back while Defendant Doe struck him on his face and torso. Either Defendant Rodriguez or Defendant Doe then dragged Plaintiff to the floor. Once Plaintiff was on the floor, Defendants Rodriguez, Cerveza, and Doe began kicking him, punching him and stomping on him.

On July 9, 2014, Plaintiff reported the incident to Defendant Fiddler, the direct supervisor of the correctional officers who beat Plaintiff. Defendant Fiddler told Plaintiff he

would take care of it and asked if Plaintiff had told medical about the beating.

On July 10, 2014, Plaintiff went to medical to report the severe back pain he suffered as a result of the beating. The medical staff gave Plaintiff a shot to relieve the pain and prescribed Tylenol with codeine.

On July 17, 2014, Defendant Rodriguez went into Plaintiff's cell while Defendant Doe held the door and acted as Defendant Rodriguez's lookout. Defendant Rodriguez again beat Plaintiff with his fists, kicked him, and told him "'if you keep on snitching it will keep happening to you.'"

When Plaintiff went to medical following this assault, the medical staff told Plaintiff to just take his pills.

Plaintiff then returned to his building. After Plaintiff entered the building and began walking up the stairs to his cell, Plaintiff was pulled from behind. Plaintiff next remembers waking up on the floor face down. Plaintiff could not move his legs. Defendant Rodriguez and Defendant Doe debated who would hit the alarm, because the correctional officer who hits the alarm is required to write the incident report.

Plaintiff was placed on a gurney and taken to medical. At medical, Defendant Smith asked what happened, but Plaintiff could not respond because the officers who beat him and threatened him were present. Although it was clear that Plaintiff had just suffered a beating, Defendant Smith told Plaintiff "'to take it like a man walk back to the block.'" Plaintiff could not feel or move his legs. Plaintiff remained silent for fear of retaliation.

The medical staff then examined Plaintiff's legs. Plaintiff informed the medical staff that he could not feel his legs. Medical staff then waited 2 hours, debating whether to transport Plaintiff to a hospital in Bakersfield by Air-Vac or simply call a local ambulance. After 2 hours, Plaintiff was taken by ambulance to Desert Valley Hospital in Tehachapi where the staff did x-rays and physical tests. Plaintiff was then transported to Mercy Hospital.

At Mercy Hospital, medical staff inserted a catheter, but Plaintiff could not feel it. Mercy Hospital medical staff did more x-rays and an MRI. Plaintiff was then taken to a holding cell and admitted to the hospital. At the hospital, three doctors examined Plaintiff and

4

approved him for surgery the next day. Plaintiff suffered "'essentially complete paralysis of his bilateral lower extremities . . . with complete loss of both motor and sensory function.'"

After surgery, Plaintiff was returned to CCI. Within 24 hours, Plaintiff was sent to a California Department of Corrections and Rehabilitation ("CDCR") treatment facility at Pleasant Valley State Prison, where he stayed for 90 days while recovering from surgery.

When Plaintiff arrived back at CCI, on September 19, 2014, he could barely move and was confined to a wheel chair. When he arrived, the transportation officers yanked him from the squad car, causing him to fall to the ground. The correctional officers then kicked him on his back and head.

Plaintiff was again examined by medical staff at CCI, who sent him back to Mercy Hospital in Bakersfield. Two days later, on September 21, 2014, Plaintiff was returned to CCI, where he was housed in a medical cell.

On December 8, 2014, Plaintiff was transported to California Substance Abuse Treatment Facility ("SATF").

When Plaintiff was discharged from Mercy Hospital after his surgery, the CDCR was provided with discharge instructions for his after-surgery care. According to those discharge instructions, Plaintiff was to be provided with Norco for pain management. The discharge instructions specifically stated that Plaintiff was not to be given any NSAIDs. However, since arriving at SATF, CDCR medical staff, including Defendants Kokor and Ugawuze, have refused to provide Plaintiff with the medication specified by Mercy Hospital. Instead, they have prescribed only NSAIDs. As a result, Plaintiff's condition has worsened and he has suffered pain, as well as extreme and persistent emotional distress caused by the lack of proper pain management. Additionally Plaintiff's internal organs have been damaged and he has suffered sleep deprivation.[1]

---

[1] Plaintiff also describes his administrative appeals process, including that CCI staff repeatedly "misplaced" his appeals. This order does not examine the potential of an affirmative defense of failure to exhaust administrative remedies, and so does not summarize those facts in depth.

Plaintiff's complaint also includes a preface about CCI generally, alleging that it tolerates, if not encourages, organized gang activity among its correctional officers. That gang is called the Green Wall and routinely engages in the organized use of unreasonable, unnecessary and excessive force against inmates in violation of inmates' constitutional rights. The active presence of the Green Wall is well known to CDCR staff, officers, wardens and supervisors, including Defendant Holland, Warden at CCI. There have been multiple civil rights lawsuits against CCI staff, as well as an active investigation by the United States Department of Justice on this issue.

## IV. SUMMARY OF ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

The material factual allegations in the Second Amended Complaint are largely identical to the factual allegations on Plaintiff's original complaint. A summary of the factual allegations in the original complaint are in the Court's prior screening order.

There are, however, differences. The Second Amended Complaint does not mention the "gang" known as the Green Wall, does not list supervisory personnel as defendants, and does not list Ugamueze as a defendant (the defendants listed in the second amended complaint are Rodriguez, Cerveza, Doe, Dr. Kokor, and Dr. El-Said).

Additionally, Plaintiff added an explicit retaliation claim against defendants Rodriguez, Cerveza, and Doe, and added a claim for deliberate indifference to serious medical needs against a new defendant, defendant El-Said.

Plaintiff also attached medical records.

## V. SECTION 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

\\\

\\\

## VI. ANALYSIS FROM SCREENING ORDER ON PLAINTIFF'S ORIGINAL COMPLAINT (ECF NO. 7)

### 1. EVALUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIM AGAINST SUPERVISORS OF THE ASSAULTING OFFICERS

Plaintiff's first and second causes of action claimed that various supervisors of the correctional officers, including Defendants Holland, Fiddler, Smith and Jones, violated Plaintiff's Eight Amendment rights because they were responsible for supervising, disciplining and providing training for all correctional officers and staff at CCI and were allegedly aware of the so-called "Green Wall" gang of correctional officers.

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009). In other words, there must be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).

Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013) ("A prison official in a supervisory position may be held liable under § 1983... 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting Lolli v. Cty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)). Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To

state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

With this law in mind, the Court found that Plaintiff's complaint failed to state a claim against Defendants Holland, Fiddler, Smith, and Jones. Although Plaintiff's complaint alleged the words in the legal standards regarding their personal knowledge of organized gang activity that directly contributed to this assault, it lacked specific facts that would demonstrate such knowledge. Although Plaintiff informed certain of these defendants of these attacks after the fact, there is no evidence that these defendants knew of any of the attacks in advance and deliberately failed to take action to prevent them. Additionally, based on the facts alleged, these defendants did not personally participate in the constitutional violation. Finally, Plaintiff did not allege any facts that would show (or allow the Court to draw the reasonable inference) that these defendants promulgated or implemented a policy of allowing correctional officers to use excessive force on inmates. The fact that other unnamed lawsuits and investigations are taking place is insufficient without underlying facts that indicate that these defendants knew of the violations and failed to act, or that these defendants promulgated or implemented a policy of allowing correctional officers to use excessive force on inmates. Moreover, merely being a supervisor to the correctional officers who allegedly used excessive force on Plaintiff is insufficient to state such a claim.

## 2. EVALUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIM AGAINST DEFENDANTS RODRIGUEZ, CERVEZA AND DOE

Plaintiff's third cause of action asserted an Eighth Amendment claim against Defendants Rodriguez, Cerveza, and Doe.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v McMillian, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (quotations omitted). For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment, regardless of whether or not significant injury is evident. Hudson, 503 U.S. at 9-10; Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

The Court found that Plaintiff's complaint alleged a cause of action for violation of the Eighth Amendment against Defendants Rodriguez, Cerveza, and Doe for use of excessive force.

## 3. EVALUATION OF PLAINTIFF'S EIGHTH AMENDMENT CLAIM AGAINST DEFENDANTS KOKOR AND UGAMUEZE

Plaintiff's fourth cause of action alleged a violation of the Eighth Amendment against Defendants Kokor and Ugamueze based on their failure to provide the medication prescribed by Mercy Medical Center.

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This

requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

This Court found that Plaintiff's complaint failed to state a claim against Defendants Kokor and Ugamueze for deliberate indifference to serious medical needs. Plaintiff alleged that Mercy Medical Center prescribed certain pain medication at some point in time, but that

Defendants Kokor and Ugamueze did not prescribe that same medication when they took over Plaintiff's medical care. This alone does not demonstrate deliberate indifference to serious medical needs because Defendants Kokor and Ugamueze could very well have a difference of opinion from Mercy Medical personnel regarding the proper pain medication. Moreover, Plaintiff's medical situation was changing and it is possible that the pain medication appropriate upon release from Mercy Medical was not the same by the time Plaintiff came under the care of Defendants Kokor and Ugamueze.

### 4. ANALYSIS OF PLAINTIFF'S FIRST AMENDMENT CLAIM FOR RETALIATION AGAINST DEFENDANTS RODRIGUEZ AND DOE

Prisoners have a First Amendment right to be free from retaliation for filing grievances against prison officials. Waitson v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five elements. Waitson, 668 F.3d at 1114. First, the plaintiff must show that the underlying conduct is protected. *Id.* The filing of an inmate grievance is protected conduct, Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech and to petition the government, Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). Second, the plaintiff must show the defendant took adverse action against the plaintiff. Rhodes, at 567. Third, the plaintiff must show a causal connection between the adverse action and the protected conduct. Waitson, 668 F.3d at 1114. Fourth, the plaintiff must show that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568. Fifth, the plaintiff must show "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution…." Rizzo, 778 F.2d at 532

While Plaintiff's complaint did not specifically allege a cause of action for retaliation, the Court found that the facts alleged were enough to state a cognizable retaliation claim against Defendant Rodriguez and Defendant Doe. According to Plaintiff, after he reported to Defendant Fiddler that Defendants Rodriguez, Cerveza, and Doe assaulted him, Defendants Rodriguez and Doe came to his cell. Defendant Doe kept watch, while Defendant Rodriguez

beat Plaintiff and told him "'if you keep on snitching it will keep happening to you.'" Accordingly, the Court found that Plaintiff stated a claim for retaliation in violation of the first amendment against Defendants Rodriguez and Doe.

## VII. ANALYSIS OF CLAIMS IN SECOND AMENDED COMPLAINT

As it did in its prior screening order, the Court finds that Plaintiff states a cognizable Eighth Amendment excessive force claim against Defendants Rodriguez, Cerveza, and Doe, and a cognizable First Amendment retaliation claim against Defendants Rodriguez and Doe. Additionally, for the reasons discussed in its prior screening order, the Court finds that Plaintiff once again fails to state a cognizable claim against Defendant Kokor. (See id. at 9-10).

As to the excessive force claim against Defendants Rodriguez, Cerveza, and Doe, there are actually two alleged excessive force incidents. The first alleged incident, which occurred on July 9, 2014, states a cognizable excessive force claim against Defendants Rodriguez, Cerveza, and Doe.

As to the second alleged incident, which took place on July 15, 2014, the Court finds that the Second Amended Complaint only states a cognizable excessive force claim against Defendant Rodriguez. According to Plaintiff, Defendant Doe held the door and acted as a lookout while Defendant Rodriguez assaulted Plaintiff. Defendant Doe himself did not use any force on Plaintiff, or directly participate in the use of force. Accordingly, Plaintiff fails to state an excessive force claim against defendant Doe as to the second incident.

However, as to the second incident, the Court finds that Plaintiff does state a cognizable claim against Defendant Doe for failure to protect in violation of the Eighth Amendment. Prison officials have a duty under the Eighth Amendment to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 832–33; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. This showing involves subjective and objective components: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Id. at 837. "The

13

question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health....'" Id. at 843 (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)). Plaintiff has sufficiently alleged facts suggesting that Defendant Doe subjectively knew that there was a serious threat to Plaintiff's safety, but did nothing to protect Plaintiff from that threat.

As to Plaintiff's new retaliation claim against Defendant Cerveza, the Court finds that Plaintiff fails to state a cognizable claim. There are five basic elements to a First Amendment retaliation claim: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005). While an adverse action was allegedly taken (Defendant Cerveza allegedly attacked Plaintiff), there is no allegation in the Second Amended Complaint that Defendant Cerveza attacked Plaintiff because Plaintiff engaged in protected conduct. In fact, outside of that first attack, there is no allegation that Defendant Cerveza did or said anything to Plaintiff.[2] While Plaintiff may have had reason to be fearful of defendant Cerveza, that alone is not enough to state a cognizable retaliation claim.

As to Plaintiff's new deliberate indifference claim against Defendant El-Said, the Court finds that Plaintiff fails to state a cognizable claim. "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v.

---

[2] Plaintiff does state that "[d]ue to defendant[] Cerveza['s] aggressive behavior he… istructed [sic] for plaintiff to go back to his building." (ECF No. 14, pgs. 6-7). However, there is no indication what this aggressive behavior was (so the Court cannot determine whether it was, or could be considered, an "adverse action"), and there is also no indication that the aggressive behavior had any relation to Plaintiff's exercise of protected conduct.

Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

Plaintiff's claim against Defendant El-Said seems to be based on the following facts: Plaintiff's cell was on the second floor; Plaintiff was given crutches; and on July 17, 2014, Plaintiff started walking up the stairs to his cell, and then remembers waking up on the floor face down.[3] These allegations are not enough to state a cognizable claim against Defendant El-Said. First, it is not clear if it was Defendant El-Said who ordered that Plaintiff be given crutches. Second, even if it was Defendant El-Said who ordered that Plaintiff be given crutches, there are no factual allegations that suggest that Defendant El-Said subjectively knew that Plaintiff was housed on the second floor. Finally, even if Defendant El-Said knew that Plaintiff was housed on the second floor and ordered that Plaintiff be given crutches, there are no factual allegations suggesting that housing Plaintiff on the second floor put Plaintiff at an excessive risk of harm to his health. Accordingly, Plaintiff has failed to state a claim against Defendant El-Said.[4]

---

[3] Plaintiff does allege that he was not receiving proper medication for his pain (ECF No. 14, p. 13), but that allegation does not appear to have any relation to Defendant El-Said. Even if it does, Plaintiff failed to allege any facts that would even suggest that Defendant El-Said subjectively knew that Plaintiff needed stronger pain medication, but refused to prescribe that medication to Plaintiff.

[4] The Court notes that, in his original complaint, Plaintiff alleged that, when he was walking up the stairs, he "felt someone pulling him from behind." (ECF No. 1, p. 7). No explanation is given as to why Plaintiff now

**VIII.   CONCLUSION AND RECOMMENDATIONS**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that all claims and defendants, except for Plaintiff's claims against Defendants Rodriguez, Cerveza, and Doe for excessive force in violation of the Eighth Amendment, against Defendant Doe for failure to protect in violation of the Eighth Amendment, and against Defendants Rodriguez and Doe for retaliation in violation of the First Amendment, be DISMISSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __**December 8, 2017**__          /s/ _Erica P. Grosjean_
                                         UNITED STATES MAGISTRATE JUDGE

---

appears to be alleging he fell, and that he fell because of Defendant El-Said's deliberate indifference to his serious medical needs.